UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
GARY D. LILLEY,                         )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )            Civil Action No. 02-2290 (PLF)
                                        )
RENEE STOUT,                            )
                                        )
            Defendant.                  )
                                        )
_____)

<u>MEMORANDUM OPINION</u>

      This case arises from a disputed collaboration between the two named parties in the production of a work of art.  Plaintiff Gary Lilley, a photographer, claims that photographs he produced were incorporated without proper attribution into an artwork, "Red Room at Five," created by defendant Renee Stout.  Lilley claims that Stout's acts constituted a violation of his rights under the Visual Artists Rights Act of 1990 ("VARA"), Pub.L. No. 101-650 (tit. VI), 104 Stat. 5089, 5128-33 (codified in various sections of Title 17 of the United States Code), the Copyright Act, 17 U.S.C. § 101 *et seq*., and the Lanham Act, 15 U.S.C. § 1501 *et seq*.  He also makes claims for breach of contract and unjust enrichment.  Stout has moved to dismiss the VARA and the Copyright Act claims for failure to state a claim.  By order of March 31, 2005, the Court granted Stout's motion to dismiss with respect to the VARA claim but denied the motion with respect to the Copyright Act claim.  This Opinion explains the Court's March 31 Order.

I. BACKGROUND

      Plaintiff Gary Lilley is a "photographer [who] has been taking photographs since at least 1992."  Second Amended Complaint ("Second Am. Compl.") at ¶ 7.  From 1993 to mid-2000, he and defendant Renee Stout, who is also an artist, "collaborated on several projects."  <u>Id.</u> at ¶¶ 9-10.  For an unspecified period of time during that period, they also were "involved in a

personal relationship," id. at ¶ 10, the failure of which has led, at least in part, to this dispute. See id. at Exh. D.

In the summer of 1998, Stout asked Lilley to "take some photographs at a friend's home . . . as studies for paintings [Stout] planned to create." Second Am. Compl. at ¶ 12.  At the friend's home, Lilley photographed a "red" room using his own camera and choosing the subject matter of each photograph.  Id.  After the photographs were developed, Stout "reviewed [them] with [Lilley] and discussed which frames would make good studies" for her paintings.  Id. at ¶ 13.  After this review session, Lilley allowed Stout to keep the photographic prints and negatives so that she could finalize her project.  Id. at ¶¶ 13, 15.

Stout created one painting from the photographs and decided to use the photographs themselves as part of an artwork.  Second Am. Compl. at ¶¶ 14-16.  This resulting work, entitled "Red Room at Five," is central to the parties' dispute.  Lilley claims that he agreed to allow Stout to use the photographs of the "red" room provided that he "receive a complete copy of the artwork and proper attribution for the photographs."  Id. at ¶ 16.  Stout agreed to these terms and later gave Lilley a copy of the work.  Id. at ¶ 17.

"Red Room at Five" consists of six of Lilley's photographs that had been "selected and arranged by [Stout] and placed in a binder with a red cover and illustration." Second Am. Compl. at ¶ 17.  When Lilley received the work, it did not include a colophon, "a notice that accompanies a work and provides information relating to the publication and authorship."  Id.  Lilley subsequently requested a copy of the colophon but was told it was incomplete.  Id. at ¶ 18.  The personal relationship between the parties ended in August 2000, and Lilley continued to request copies of the colophon to no avail.  Id. at ¶¶ 19-20.  Finally, in April 2001, Lilley received a draft colophon that stated:  "Photographs by the artist and by Gary Lilley at the direction of the artist."  Id. at ¶¶ 21-22.  Lilley contends that the language of the colophon amounts to improper attribution of his "work[s] of visual art" under VARA.  Id. at ¶ 39.  In

addition, Lilley claims that Stout is selling both "Red Room at Five" and individual photographs taken by Lilley as her own works, thereby violating the Copyright Act. <u>Id.</u> at ¶¶ 29, 33.

## II. DISCUSSION

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes the truth of the facts alleged and may grant the motion only if it appears that plaintiff will be unable to prove any set of facts that would justify relief. <u>See</u> <u>Summit Health, Ltd. v. Pinhas</u>, 500 U.S. 322, 325 (1991); <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Browning v. Clinton</u>, 292 F.3d 235, 242 (D.C. Cir. 2002); <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1117 (D.C. Cir. 2000). The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant plaintiff[] the benefit of all inferences that can be derived from the facts alleged." <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994); <u>see</u> <u>Razzoli v. Fed. Bureau of Prisons</u>, 230 F.3d 371, 374 (D.C. Cir. 2000); <u>Taylor v. FDIC</u>, 132 F.3d 753, 761 (D.C. Cir. 1997); <u>Harris v. Ladner</u>, 127 F.3d 1121, 1123 (D.C. Cir. 1997). While the complaint is to be construed liberally in plaintiff's favor, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the Court accept plaintiff's legal conclusions. <u>See</u> <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d at 1276.

### A. Visual Artists Rights Act of 1990

Plaintiff has alleged a claim under the Visual Artists Rights Act of 1990 ("VARA"). Congress enacted VARA to "protect[] both the reputations of certain visual artists and the works of art they create." H.R. Rep No. 101-514, at 7, <u>reprinted in</u> 1990 U.S.C.C.A.N. 6915 ("House Report"). These protections are enumerated in the individual rights of "attribution" and "integrity," known collectively as "moral rights." <u>Id</u>. As described in the House Report accompanying the legislation, "[t]he former ensures that artists are correctly identified with the works of art they create, and that they are not identified with works created by

others.  The latter allows artists to protect their works against modifications and destructions that are prejudicial to their honors or reputations."  Id.  Specifically, the rights of attribution include the right to (a) claim authorship of a work he or she created, and (b) prevent the use of one's name as the author of a work that he or she did not create.  See 17 U.S.C. § 106A(a)(1)-(2).  The rights of integrity permit an author to (a) prevent any intentional distortion, mutilation, or other modification of his or her work, and (b) prevent any destruction of a work of recognized stature. See 17 U.S.C. § 106A(a)(3).

As "moral rights" legislation, VARA vested immutable rights in an author that generally could not be assigned or transferred, see 17 U.S.C. § 106A(e), and that are "independent of the exclusive rights provided in [Section] 106."  Id.  Thus, ownership of the copyright in a work is irrelevant to an author's standing to bring a VARA claim.  Indeed, even if an author wishes to waive his or her rights under VARA, such a waiver can be effected only by a written instrument signed by the author that specifically identifies the work and the specific uses of that work.  See 17 U.S.C. § 106A(e).

Absent this waiver, a court must consider whether the artistic work qualifies as a "work of visual art."  Recognizing the broad scope of protections afforded to eligible authors, Congress created a tightly circumscribed definition for qualified works.  See House Report at 6920 (noting that the Congressional hearings "revealed a consensus that the bill's scope should be limited to certain carefully defined types of works and artists").  Thus, VARA established a new and distinct genus of art: "work[s] of visual art," which differs in many respects from the pre-existing categories in Section 102(a) of the Copyright Act.  See 3-8D NIMMER ON COPYRIGHT § 8D.06(A)(1) (2004).

For a photographic work to qualify for protection as a "work of visual art" under VARA, it must meet the statutory definition:  "a still photographic image produced for exhibition purposes only, existing in a single copy that is signed by the author, or in a limited edition of 200

4

copies or fewer that are signed and consecutively numbered by the author."  17 U.S.C. § 101.[1]
The Court concludes that the statutory term "still photographic image" in Section 101 has a plain
and unambiguous meaning.  It is clear from a plain reading of the statute and the specific context
in which the language is used that both photographic prints and negatives qualify as "still
photographic image[s]" and that both therefore are eligible for protection as "work[s] of visual
art" under VARA.  See House Report at 6921 (definition of a "still photographic image"
encompasses a wide range of artistic works, including "positives (for example, prints, contact
sheets, and transparencies such as slides) and negatives (negative photographic images or
transparent material used for printing positives) of a photograph." )).  See also Flack v. Friends of
Queen Catherine Inc., 139 F.Supp.2d at 526, 534 (S.D.N.Y. 2001) (citing House Report 101-514
to support the assertion that "even certain photographic negatives are covered" by VARA).

          In addition to demonstrating that photographs or negatives are "works of visual
art," a plaintiff to succeed under VARA also must satisfy the remaining statutory requirements
under the Visual Artists Rights Act:  intent to exhibit, uniqueness, and signing.  See 17 U.S.C.
§ 101.  Defendant argues that plaintiff's complaint fails to make a sufficient intent to exhibit
allegation under the statute -- that is, that his prints or negatives were "produced for exhibition
purposes only" -- or that the prints and negatives in question have been "signed by the author."
See Defendant's Memorandum in Support of Motion to Dismiss at 11-13.  According to the
defendant, plaintiff's claim that the photographs at issue were taken "as studies for paintings
defendant planned to create" is sufficient to demonstrate that they fall outside the relevant
definition of a "work of visual art."  Id. at 13-14.  Plaintiff replies that he has averred the facts

---

[1]      The extent of VARA coverage for photographic images appears to be a question of first
impression.  While previous courts have addressed sculpture, see Carter v. Helmsley-Spear, Inc.,
71 F.3d 77 (2d Cir. 1995), murals, see Pollara v. Seymour, 150 F.Supp.2d 393 (N.D.N.Y. 2001),
and public art, see Martin v. City of Indianapolis, 192 F.3d 608 (7th. Cir. 1999), it appears that
none squarely addressed photographic works outside of the mass media context.  See, e.g.,
Berrios Nogueras v. Home Depot, 330 F.Supp.2d 48 (D. P.R. 2004) (considering the use of
photographic reproductions in publicity brochures).

necessary to demonstrate the proper intent to exhibit and that "community standards" should be applied to the signing requirement.  <u>See</u> Plaintiff's Opposition Memorandum at 9-13.[2]

The question of intent to exhibit is especially challenging in the realm of photography.  While it may appear simple to distinguish between an amateur photographer taking snapshots on vacation and an artist producing photographs "for exhibition only," few artists would characterize their work as the latter.  Indeed, many notable "fine art" photographers pursued their work in quite utilitarian contexts.  <u>See</u> Jennifer T. Olsson, <u>Note: Rights in Fine Art Photography: Through a Lens Darkly</u>, 70 TEX. L. REV. 1489, 1499-1500 (1992) ("Eugune Atget's revered photographs of a vanishing Paris were initially made as reference documents for painters to copy.  Weegee photographed crime scenes in the service of photojournalism. . . . August Sander's self imposed mission was to create a virtual catalog of the German people.")

The technical realities of photography also complicate the question.  At least three distinct phases comprise the photographic process that results in a positive print: practical camera handling, negative development, and printing.  <u>See</u>, <u>e.g.</u>, 25 THE NEW ENCYCLOPÆDIA BRITANNICA 782-89 (15th ed. 1998) (explaining the photographic process).  As discussed above, both photographic negatives and prints fit the definition of a "still photographic image."  Thus, in the course of creating her art, a photographer almost always will create two images, first a negative and then a print, for which VARA protection may be justified.  As plaintiff Lilley notes, the term "for exhibition purposes only" cannot be limited to the author's "purpose" at the moment she clicks the camera's shutter.  If that were the case, then only the photographic negative would ever be protected, as its production and purpose were contemporaneous with the click of the shutter.  Instead, it seems more reasonable that the intent or purpose of the author be examined as of the time the unique work in question is "produced."[3]

---

[2]     Because of its conclusion regarding the intent to exhibit requirement, the Court need not reach plaintiff's "community standards" argument.

[3]     It may be relevant here that the statute does not use the word "created," which has a specific statutory definition, but instead uses the word "produced," which is undefined.  The

This method of analysis comports with the uncertain time frame expressed in the term "produced" in Section 101 and responds to the reality that a negative "produced" in one instant and a print "produced" in another may correspond to different intentions or purposes of the author.  While courts have expounded on how the process of practical camera handling "imbue[s] the medium with almost limitless creative potential," SHL Imaging, Inc. v. Artisan House, Inc., 117 F.Supp.2d 301, 310 (S.D.N.Y., 2000), few opportunities have arisen for courts to explore the opportunity for creativity in the process of developing negatives or producing prints.  As many professional photographers and artists recognize, however, the process of producing a print from a negative contains room for originality.  Thus, plaintiff Lilley's intent when clicking the shutter of his camera and creating the negatives is irrelevant to his claim.  His probably different purpose in developing the negatives to produce the prints is the real issue.  Were they "produced for exhibition purposes only"?

Plaintiff's case presents a good example of the potential for the fact that a single work of visual art may be created for a variety of purposes.  As a result, it may be difficult to assign a specific intent.  Plaintiff Lilley admits that the photographs were taken to serve "as studies for paintings defendant [Stout] planned to create."  Second Am. Compl. at ¶ 11.  Contrary to defendant's assertion, VARA does not pose a *per se* bar to protection for preparatory works, such as studies.  See, e.g., Flack v. Friends of Queen Catherine Inc., 139 F.Supp.2d 526 at 533 (holding that a clay model, which was part of a larger, unfinished bonze sculpture, qualified as a "work of visual art.")  In addition, it may be fair to infer from the facts plaintiff alleges -- at least on a motion to dismiss for failure to state a claim -- that, when taking the photographs of the "red" room, Lilley intended to exhibit the resulting prints.  This inference could be drawn from plaintiff's artistic background, past experience as a photographer, and previous collaboration with the defendant to create art for exhibition.  While these inferences might be relevant if the

_____

statutory language speaks of "a still photographic image produced for exhibition purposes only." 17 U.S.C. § 101 (2).  "Created" occurs when a work is "fixed in a copy or phonorecord for the first time." Id. at § 101.

issue before the Court related to the negatives Lilley produced, the circumstances of the
photographic prints can be resolved more easily.

Plaintiff's own assertions demonstrate quite clearly that the discrete photographic
prints at issue were not "produced for exhibition purposes *only*."  17 U.S.C. § 101 (emphasis
added).  His complaint states that once the photographs were developed, he and the defendant
"reviewed the photographs . . . and discussed which frames would make good studies for a series
of paintings."  Second Am. Compl. at ¶ 13.  The photographic prints at issue -- those that were
"reviewed" with defendant and comprise "Red Room at Five" -- therefore were not "produced
for exhibition purposes only."  Rather, they had the primary purpose of assisting defendant Stout
in her artistic endeavor.  Indeed, the only suggestion that plaintiff had any alternative motivation
for producing the images comes from a statement in his opposition to the motion that he "alleged
that the photographs were intended for 'exhibition purposes only.'"  See Plaintiff's Opposition to
Defendant's Renewed Motion to Dismiss at 12.  This statement, however, appears nowhere in
plaintiff's amended complaint.  As a result, under the "well-pleaded complaint rule", it is not an
allegation that has been pled and may someday be proved at trial.  Bush v. Clark Const. &
Concrete Corp.  267 F.Supp. 2d. 43, 45 (D.D.C. 2003) (citing Caterpillar, Inc. v. Williams, 482
U.S. 386, 392 (1987)).

But even if the claim had been pled in the complaint, it is belied by plaintiff's acts
of reviewing the photographs with defendant and turning over possession to her.  It is difficult to
conceive how plaintiff could have exhibited these prints once they were incorporated into "Red
Room at Five."  Because plaintiff's own assertions demonstrate that the discrete photographs at
issue were not produced solely for exhibition purposes, his photographic prints fail to satisfy the
definition of "work[s] of visual art" in Section 101, and his amended complaint thus fails to state

a claim under VARA.[4]  Defendant's motion to dismiss plaintiff's complaint for failure to state a

claim therefore must be granted.[5]

### B. Remaining Claims

With respect to plaintiff's remaining claims under the Copyright Act, the Court

cannot conclude that plaintiff will be unable to present any set of facts entitling him to relief.

The complaint, though lacking in detail, alleges sufficient facts to make out a *prima facie* case on

these claims.  Accordingly, defendant's motion to dismiss plaintiff's claim under the Copyright

Act is denied.

An Order consistent with this Opinion, dismissing Count II of the Amended

Complaint (the VARA claim) and denying the motion to dismiss Count I (copyright

infringement), was issued on March 31, 2005.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE: July 19, 2005                         United States District Judge

---

[4]       Contrary to plaintiff's assertion, the status of his negatives cannot redeem the failure
of the photographic prints to fulfill the statutory requirements of VARA.  As discussed above,
plaintiff's claim that the negatives fall under the definition of a "still photographic image" is
valid, but his subsequent contention that any "prints made from those negatives" are also covered
merely because the negatives are covered is implausible.  Otherwise, one could avoid the specific
intent requirement (not to mention the signing and numbering requirement) for all still
photographic images -- regardless of the number of prints subsequently produced -- merely by
claiming VARA protection in the photographic negative from which the numerous prints were
made.  While the actual negative might be protected under VARA, its status is irrelevant to prints
subsequently produced from it.  "[T]he existence of rights under VARA depends on precisely
these distinctions between an original artwork and various reproductions of it."  Silberman v.
Innovation Luggage, Inc., 67 U.S.P.Q.2d 1489, 1494 (S.D.N.Y., 2003).  It is the *original* or
*limited edition* still photographic image, whether in print or negative form, that garners the rights
VARA bestows.  See House Report at 6921.

[5]       While, in view of this conclusion, it is not necessary to discuss the signing requirement of
the statute, it does not appear from anything in the record that plaintiff's original photographs
were signed by him.  See Defendants' Joint Opposition to Plaintiff's Motion to Amend
Complaint at 7 ("Plaintiff utterly confuses his original photographs, which he never signed, with
"Red Room at Five," which is a work completed by Ms. Stout, using altered copies of Plaintiff's
alleged photographs, and signed by her.") (emphasis in original).